UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In the Matter of the Search of: ) | |
| ) | Case No: 2:25-mj-438 |
| The residence located at 2979 Grasmere Ave, ) | |
| Columbus, Ohio, including any curtilage or ) | Magistrate Judge: Deavers |
| detached buildings/garages, and any computers, ) | |
| related digital media, or digital devices located therein; ) | |
| the person of Ryan Driscoll and the Honda Civic ) | |
| registered to him bearing OH license #GVR3937, ) | **UNDER SEAL** |
| and any computers or digital media located therein ) | |
| or thereon. ) | |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Anna S. Edgar, a Special Agent with Homeland Security Investigations (HSI), being duly sworn, hereby depose and state:

**EDUCATION TRAINING AND EXPERIENCE**

1. I have been employed as a Special Agent ("SA") of U.S. Department of Homeland Security, Homeland Security Investigations ("HSI"), since January 2010, and I am currently assigned to the HSI office of the Assistant Special Agent in Charge (ASAC) in Columbus, OH. While employed by HSI, I have investigated federal criminal violations related to cybercrime, child exploitation, and child pornography. I have gained experience through training at the Federal Law Enforcement Training Center in Glynco, GA and everyday work relating to conducting these types of investigations. I have received training in the areas of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. Since 2019, I have been assigned to the Franklin County Internet Crimes Against Children Task Force working cases involving child pornography, child sexual abuse, and child exploitation. Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2252, and 2252A, and I am authorized by law to request a search warrant.

**PURPOSE OF THE AFFIDAVIT**

2. This Affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant for the locations specifically described in **Attachments A, B, C** and **D** of this Affidavit. The facts set forth below are based upon my knowledge, experience, observations, and investigation, as well as the knowledge, experience, investigative reports, and information provided to me by other law enforcement agents. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every known fact to me relating to the investigation. I have set forth only the facts that I believe are necessary to establish probable cause for a search warrant for the person of Ryan Driscoll, DOB: 08/19/1983 (the **SUBJECT PERSON**), the residence located at 2979 Grasmere Ave., Columbus, OH (the **SUBJECT PREMISES**); and the vehicle belonging to the **SUBJECT PERSON**, specifically a Honda Civic, with Ohio license GVR3937 (the **SUBJECT VEHICLE**). I have not omitted any facts that would negate probable cause.

3. The **SUBJECT PREMISES, SUBJECT VEHICLE**, and **SUBJECT PERSON**, to be searched are more particularly described in A**ttachment A, B**, and **C** respectively, for the items specified in **Attachment D**, which items constitute instrumentalities, fruits, and evidence of violations of 18 U.S.C. §§ 2252 and 2252A – the distribution, transmission, receipt, and/or possession of child pornography. I am requesting authority to search the **SUBJECT PERSON, SUBJECT VEHICLE**, and the entire **SUBJECT PREMISES**, including the residential dwelling, curtilage, detached buildings and storage units, for any computers, cellular "smart" phones and/or mobile computing device or digital media located thereon/therein, and to thereafter seize and examine any such device that is recovered from the **SUBJECT PERSON, SUBJECT VECHICLE** or **SUBJECT PREMISES**, for items specified in **Attachment D**, and to seize all items listed in **Attachment D** as evidence, fruits, and instrumentalities of the above violations.

## APPLICABLE STATUTES AND DEFINITIONS

4. Title 18, United States Code, Section 2252, makes it a federal crime for any person to knowingly transport, receive, distribute, possess or access with intent to view any visual depiction of a minor engaging in sexually explicit conduct, if such receipt, distribution or possession utilized a means or facility of interstate commerce, or if such visual depiction has been mailed, shipped or transported in or affecting interstate or foreign commerce.

2

This section also prohibits reproduction for distribution of any visual depiction of a minor engaging in sexually explicit conduct, if such reproduction utilizes any means or facility of interstate or foreign commerce, or is in or affecting interstate commerce.

5. Title 18, United States Code, Section 2252A, makes it a federal crime for any person to knowingly transport, receive or distribute any child pornography using any means or facility of interstate commerce, or any child pornography that has been mailed, or any child pornography that has shipped or transported in or affecting interstate or foreign commerce by any means, including by computer. This section also makes it a federal crime to possess or access with intent to view any material that contains an image of child pornography that has been mailed, shipped or transported using any means or facility of interstate or foreign commerce, or in or affecting interstate commerce by any means, including by computer.

6. As it is used in 18 U.S.C. § 2252A(a)(2), the term "child pornography"[1] is defined in 18 U.S.C. § 2256(8) as: any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where: (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

7. As it is used in 18 U.S.C. §§ 2251 and 2252, the term "sexually explicit conduct" is defined pursuant to Title 18, United States Code, Section 2256(2)(A) as "actual or simulated (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person."

8. The term "sexually explicit conduct" has the same meaning in § 2252A as in § 2252, except that for the definition of child pornography contained in § 2256(8)(B), "sexually explicit

---

[1] The term child pornography is used throughout this affidavit. All references to this term in this affidavit and Attachments A and B hereto, include both visual depictions of minors engaged in sexually explicit conduct as referenced in 18 U.S.C. §§ 2251 and 2252 and child pornography as defined in 18 U.S.C. § 2256(8).

3

conduct" also has the meaning contained in § 2256(2)(B): (a) graphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex, or lascivious simulated sexual intercourse where the genitals, breast, or pubic area of any person is exhibited; (b) graphic or lascivious simulated (i) bestiality, (ii) masturbation, or (iii) sadistic or masochistic abuse; or (c) graphic or simulated lascivious exhibition of the genitals or pubic area of any person.

9. The term "minor", as used herein, is defined pursuant to Title 18, U.S.C. § 2256(1) as "any person under the age of eighteen years."

10. The term "graphic," as used in the definition of sexually explicit conduct contained in 18 U.S.C. § 2256(2)(B), is defined pursuant to 18 U.S.C. § 2256(10) to mean "that a viewer can observe any part of the genitals or pubic area of any depicted person or animal during any part of the time that the sexually explicit conduct is being depicted.

11. The term "visual depiction," as used herein, is defined pursuant to Title 18 U.S.C. § 2256(5) to "include undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image."

12. The term "computer[2]" is defined in Title 18 U.S.C. § 1030(e)(1) and 2256(6) as an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

13. The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer

---

[2] The term "computer" is used throughout this affidavit to refer not only to traditional laptop and desktop computers, but also to internet-capable devices such as cellular phones and tablets. Where the capabilities of these devices differ from that of a traditional computer, they are discussed separately and distinctly.

4

buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

14. "Cellular telephone" or "cell phone" means a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving videos; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may include geographic information indicating where the cell phone was at particular times.

15. "Internet Service Providers" (ISPs), used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

16. "Internet Protocol address" (IP address), as used herein, is a code made up of numbers separated by dots that identifies particular computer on the Internet. Every computer requires an IP address to connect to the Internet. IP addresses can be dynamic, meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

**BACKGROUND REGARDING COMPUTERS, THE INTERNET, AND MOBILE APPLICATIONS**

17. I know from my training and experience that computer hardware, mobile computing devices, computer software, and electronic files ("objects") may be important to criminal investigations in two distinct ways: (1) the objects themselves may be evidence, instrumentalities, or fruits of crime, and/or (2) the objects may be used as storage devices

that contain contraband, evidence, instrumentalities, or fruits of crime in the form of electronic data. Rule 41 of the Federal Rules of Criminal Procedure permits the government to search for and seize computer hardware, software, and electronic files that are evidence of a crime, contraband, and instrumentalities and/or fruits of crime.

18. Computers, mobile devices, and the Internet have revolutionized the ways in which those with a sexual interest in children interact with each other and with children they seek to exploit. These new technologies have provided ever-changing methods for exchanging child pornography and communicating with minors. Digital technology and the Internet serve four functions in connection with child pornography and child exploitation: production, communication, distribution, and storage.

19. Computers, tablets, and smart/cellular phones ("digital devices") are capable of storing and displaying photographs. The creation of computerized or digital photographs can be accomplished with several methods, including using a "scanner," which is an optical device that can digitize a hard copy photograph. Another method is to simply take a photograph using a digital camera or cellular phone with an onboard digital camera, which is very similar to a regular camera except that it captures the image in a computerized format instead of onto film. Such computerized photograph files, or image files, can be known by several file names including "GIF" (Graphic Interchange Format) files, or "JPG/JPEG" (Joint Photographic Experts Group) files.

20. Digital devices are also capable of storing and displaying movies of varying lengths. The creation of digital movies can be accomplished with several methods, including using a digital video camera (which is very similar to a regular video camera except that it captures the image in a digital format which can be transferred onto the computer). Such computerized movie files, or video files, can be known by several file names including "MPG/MPEG" (Moving Pictures Experts Group) files.

21. The capability of digital devices to store images in digital form makes them an ideal repository for child pornography. A single CD, DVD, or USB thumb drive can store hundreds or thousands of image files and videos. It is not unusual to come across USB thumb drives that are as large as 128 Gigabytes. The size of hard drives and other storage media that are used in home computers and cellular phones have grown tremendously within the last several years. Hard drives with the capacity of several terabytes are not

6

uncommon. These drives can store hundreds of thousands of images and videos at very high resolution. Tablet devices have average storage capabilities ranging from 32 Gigabytes to 256 Gigabytes. In addition, most tablets have the ability to utilize the various drives (thumb, jump or flash) described above, which can allow a user to access up to an additional 256 Gigabytes of stored data via the tablet. Modern cell phones have average storage capabilities ranging from 32 Gigabytes to 128 Gigabytes. In addition, most cellular phones have the ability to utilize micro-SD cards, which can add up to an additional 128 Gigabytes of storage. Media storage devices and cellular phones can easily be concealed and carried on an individual's person. Mobile computing devices, like cellular phones and tablets, also have the ability to take still and moving images that are easily stored, manipulated or transferred between devices using software or applications installed on each device. Additionally, multiple devices can be synced to a single account and when an image or video file is transferred it can be transferred to all devices synced to the account at the same time. As a result of this technology, it is relatively inexpensive and technically easy to produce, store and distribute child pornography. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and to save that image by storing it in another country. Once this is done, there is no readily apparent evidence at the scene of the crime. Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

22. The Internet is a worldwide network of computer systems operated by governmental entities, corporations, and universities. With a computer or mobile device connected to the Internet, an individual user can make electronic contact with millions of other computer or mobile device users around the world. Many individual computer/mobile device users and businesses obtain their access to the Internet through businesses known as Internet Service Providers ("ISPs"). ISPs provide their customers with access to the Internet using wired telecommunications lines, wireless signals commonly known as Wi-Fi, and/or cellular service; provide Internet e-mail accounts that allow users to communicate with other Internet users by sending and receiving electronic messages through the ISPs' servers or cellular network; remotely store electronic files on their customers' behalf; and may provide other services unique to each particular ISP. ISPs maintain records pertaining to

7

the individuals or companies that have subscriber accounts with the ISP. Those records may include identifying and billing information, account access information in the form of log files, e-mail transaction information, posting information, account application information, Internet Protocol ("IP") addresses and other information both in computer data format and in written record format.

23. These internet-based communication structures are ideal for those seeking to find others who share a sexual interest in children and child pornography or seeking to exploit children online. Having both open as well as anonymous communication capability allows the user to locate others of similar inclination and still maintain their anonymity. Once contact has been established, it is then possible to send messages and graphic images to other trusted child pornography collectors or to vulnerable children who may not be aware of the user's true identity. Moreover, the child pornography collector need not use large service providers. Child pornography collectors can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other or with children, and to exchange child pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired.

24. It is often possible to recover digital or electronic files, or remnants of such files, months or sometimes even years after they have been downloaded onto a hard drive or other digital device, deleted, or viewed via the Internet. Such files can be stored for years at little or no cost. Even when such files have been deleted, they can be recovered months or even years later using readily available forensic tools. When a person "deletes" a file from a digital device, the data contained in the files does not actually disappear; rather the data remains on the device until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space - that is, space on a storage medium that is not allocated to a set block of storage space – for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

25. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache." The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are

8

replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

26. As is the case with most digital technology, communications by way of computer or mobile devices can be saved or stored on the computer or mobile device used for these purposes. Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or mobile device, or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or ISP client software, among others. In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data.

27. Searching computer systems and electronic storage devices may require a range of data analysis techniques. Criminals can mislabel or hide files and directories, encode communications, attempt to delete files to evade detection, or take other steps to frustrate law enforcement searches. In light of these difficulties, your affiant requests permission to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in **Attachment D**.

28. A growing phenomenon related to smartphones and other mobile computing devices is the use of mobile applications. Mobile applications, also referred to as "apps," are small, specialized programs downloaded onto mobile devices that enable users to perform a variety of functions, including engaging in online chat, reading a book, or playing a game. Examples of such "apps" include Facebook, Telegram, LiveMe, Kik messenger service, Snapchat, Meet24, and Instagram.

29. These internet-based communication structures are ideal for those seeking to find others who share a sexual interest in children and child pornography. Having both open as well as anonymous communication capability allows the user to locate others of similar inclination and still maintain their anonymity. Once contact has been established, it is then possible to send messages and graphic images to other trusted child pornography collectors or to vulnerable children who may not be aware of the user's true identity. Moreover, the child

9

pornography collector need not use large service providers. Child pornography collectors can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other or with children, and to exchange child pornography. These communication links allow contact around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired.

30. Individuals can also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo!, Gmail, and Dropbox, among others. The online services allow a user to set up an account with a remote computing service that may provide e-mail services and/or electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer or mobile device capable of accessing the Internet. Apps related to this cloud-storage accounts can also be downloaded to a computer or mobile device, allowing easier access to the content of the accounts.

**SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS**

31. Searches and seizures of evidence from computers, mobile computing devices, and external storage media commonly require agents to download or copy information from the computers and their components, or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

    A. Computer storage devices can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on site; and

    B. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a

10

search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

32. In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit (CPU). In cases involving child pornography where the evidence consists partly of graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues. In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software, which may have been used to create the data (whether stored on hard drives or on external media).

33. In addition, there is probable cause to believe that any computer or mobile computing device and its storage devices (including internal storage such as SD cards), any monitors, keyboards, and/or modems are all instrumentalities of the crime(s), within the meaning of 18 U.S.C. §§ 2252 and 2252A – the distribution, receipt, and/or possession of child pornography and should all be seized as such.

## SEARCH METHODOLOGY TO BE EMPLOYED

34. The search procedure of electronic data contained in computer hardware, computer software, and/or memory storage devices may include the following techniques (the following is a non-exclusive list, as other search procedures may be used):

    1) Examination of all of the data contained in such computer hardware, computer software, and/or memory storage devices to view the data and determine whether that data falls within the items to be seized as set forth in **Attachment D**;

    2) Searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in **Attachment D**;

    3) Surveying various files, directories and the individual files they contain;

    4) Opening files in order to determine their contents;

11

5) Scanning storage areas;

6) Performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in **Attachment D**; and/or

7) Performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in **Attachment D**.

### INVESTIGATION AND PROBABLE CAUSE

35. On or about June 30, 2025, HSI Columbus received information from HSI The Hague and the Department of Homeland Security (DHS) Cyber Crimes Center Child Exploitation Unit in regard to the online activity of an individual utilizing an end-to-end encrypted application (hereinafter referred to as "Application A"). According to the information received, a user utilizing the username "diaperundiesdude" was identified by a European law enforcement agency as being a member of multiple groups within "Application A" that were dedicated to the distribution of child sexual abuse material.

36. On or about June 29, 2025, "diaperundiesdude" was observed posting in a group called "NL IRL Share" on "Application A". The post included an image of a fully clothed female child that appeared to be between the ages of 6-9 years old. After posting the image, "diaperundiesdude" posted the message, "Daughter 7", implying that the image was of his seven-year-old daughter. Based on my training and experience, "NL IRL Share" is a shortened expression meaning "No Limits in Real Life Share".

37. Subsequent to the post, user "diaperundiesdude" engaged in a private chat with another user from within the "NL IRL Share" group. The other user asked "diaperundiesdude" if the image he posted was in fact his daughter and "diaperundiesdude" confirmed the image was of his daughter and stated he has been sexually abusing the child since she was born and that she currently lives with him. In addition, "diaperundiesdude" responded to the user, "I started mine her first day home. Oral and finger her ass and rub her pussy…I'm going slow to open her up."

38. During further review of the online activity of user "diaperundiesdude", law enforcement observed the user was in several other groups that were dedicated to the distribution of child sexual abuse material. The names of these groups all start with the acronym "CP". Based on my training and experience, the acronym "CP" means child pornography. User

12

"diaperundiesdude" was a member of the following groups within "Application A" in addition to the "NL IRL Share" group:

- CP-TEENS
- CP-Zoo
- CP-Trans/Gay
- CP- Hurtcore

39. Law enforcement reviewed the online activities of the group "CP-Hurtcore" and observed there were approximately 502 members in the group, including the user "diaperundiesdude". The group chatlog revealed "diaperundiesdude" had entered the group on or around June 29, 2025, and had remained a member at the time HSI The Hague had provided HSI Columbus with information about this user. During this timeframe, dozens of child sexual abuse images and videos were shared amongst members of the group. Users were also observed discussing the sexual abuse of children, with one user stating, "Who on here has real life experiences with little girls. Or are you into just watching to afraid to do anything…Is this place filled with fake pedo's who are afraid to touch a little girl." Another user commented, "2 and 12 are nice ages." The following examples are just some of the images and videos observed by law enforcement within the "CP-Hurtcore" group.

- On June 29, 2025, an image was posted depicting a prepubescent female, approximately 2 – 4 years of age, lying naked on her back. The child's legs are up in the air and spread, exposing her vagina and anus.

- On June 29, 2025, a video was posted depicting an adult male's erect penis touching the anus of an infant.

- On June 29, 2025, a video was posted depicting an adult male's penis anally penetrating a female toddler.

- On June 30, 2025, a video was posted depicting an adult male's hand touching the vagina of a prepubescent child. The video was captioned, "Little Infants Pussy."

- On June 30, 2025, a series of images were posted depicting a prepubescent female, approximately 6 – 9 years of age. The child is naked, lying on a bed. In some of the images an adult male's penis is touching the vagina of the child. In other images, an adult male's hand is holding a knife to the child. The words "cut me slut hurt me" are written in a blood-like liquid on the child's chest.

13

40. On July 12, 2025, HSI Columbus received additional information related to the online activities of user "diaperundiesdude". As part of a separate investigation, on or about July 9, 2025, HSI Kansas City executed a state search warrant at the residence of a subject using "Application A". The subject's "Application A" username is "lovelove". The identity of "lovelove" is known to law enforcement but has been omitted to protect the ongoing investigation. During a search of "lovelove's" residence, law enforcement seized several SD cards and cellular phones belonging to "lovelove", that were later found to contain over 500 gigabytes of child sexual abuse material during a forensic examination. Furthermore, "Application A" was found to be installed and logged in to on one of "lovelove's" cell phones.

41. Investigators interviewed "lovelove", who admitted to the possession and distribution of child sexual abuse material and stated that he was a moderator of several groups on "Application A" where child sexual abuse material is shared. Furthermore, "lovelove" provided consent to allow law enforcement to assume his identity online for the purpose of conducting further investigations.

42. On or about July 11, 2025, law enforcement logged-in to the account of "lovelove" on "Application A" and observed a private conversation between "lovelove" and "diaperundiesdude". In that conversation, "diaperundiesdude" sent "lovelove" several images of two fully clothed infants that he claimed to be sexually abusing. "Diaperundiesdude" stated one of the infants was his and the other infant belonged to his "meth addicted" girlfriend. In response, "lovelove" sent diaperundiesdude" approximately nine images of child sexual abuse material, which included one image where an adult male's penis is touching the vagina of an infant and several images of toddlers with their vaginas exposed. Furthermore, "lovelove" also sent "diaperundiesdude" approximately seven images of a post-pubescent female with her breasts exposed and "lovelove" stated the images were of his two daughters and that they "all are 16 above". In the conversation, "lovelove" described sexually abusing his daughters since they were infants and both users discussed incest. After sending the child sexual abuse material, "diaperundiesdude" and "lovelove" continued to communicate.

43. Since law enforcement has become aware of "diaperundiesdude" at the end of June 2025, investigators have observed the user to be continuously active within "Application A".

14

## IDENTIFICATION OF SUBJECT PREMISES, SUBJECT PERSON, AND SUBJECT VEHICLE

44. Using various law enforcement tools, investigators were able to identify several IP addresses associated with "diaperundiesdude", including IP address 174.207.106.86. According to publicly available information, IP address 174.207.106.86 resolves to Verizon Verizon Wireless.

45. On or about June 30, 2025, HSI The Hague sent an exigent request for information and a subsequent subpoena to Verizon Wireless regarding IP address 174.207.106.86. A review of the results from Verizon Wireless revealed a cellular device, with assigned phone number (380) 239-0663, was associated with the identified IP addresses. A review of the subscriber records for phone number (380) 239-0663 revealed the associated cellular device was a "TracFone" that was activated on June 21, 2025. No further subscriber information was provided.

46. HSI The Hague obtained toll data and historical cell tower data from Verizon Wireless for the timeframe of June 21, 2025 to June 30, 2025. Verizon Wireless provided a significant number of historical cell data location points that resolved to the greater Columbus, Ohio area. Further analysis of the historical cell tower data identified a several block radius for the user of the cellular device assigned phone number (380) 239-0663.

47. On or about June 30, 2025, a subpoena was issued to Google for phone number (380) 239-0663. A review of the results from Google revealed phone number (380) 239-0663 was associated with the email account diaperundiesdude@gmail.com. The account diaperundiesdude@gmail.com was created on July 2, 2024. While reviewing the IP activity logs associated with the Google account, investigators observed dozens of log-in events during the timeframe of October 3, 2024 to June 30, 2025. The following two devices were listed as accessing the diaperundiesdude@gmail.com account:

- TCL T434D Android with IMEI 016500001198432 and Serial Number Scarab_Lite_TF:6X9949TW75FI45I7. The device was first observed by Google on February 15, 2025, and last connected on June 29, 2025.

- Motorola Moto G 2025 with IMEI 354536624929134 and Serial Number kansas:ZY32LBN265. The device was first observed by Google on June 21, 2025, and had connected as recently as the date of compliance of the subpoena.

15

48. On or about June 30, 2025, an exigent request for information and a subsequent subpoena was issued to TracFone. HSI The Hague received information from TracFone that the cellular device associated with phone number (380) 239-0663 has a corresponding IMEI of 354536624929134, which is the same IMEI as the device accessing the [diaperundiesdude@gmail.com](mailto:diaperundiesdude@gmail.com) account. Furthermore, the cellular device was purchased at a Walmart store located at 2700 Bethel Rd, Columbus, OH 43220 (Store 3812), on or about June 21, 2025, at 12:49 p.m. at register 70.

49. On June 30, 2025, a subpoena was issued to Walmart for purchase records and surveillance footage associated with the purchase of the TracFone on June 21, 2025. Investigators reviewed the records and surveillance footage and learned the TracFone was purchased by a white adult male with cash. The adult male was seen on surveillance footage driving away in a silver Honda Civic. Using law enforcement investigative techniques, investigators were able to identify the vehicle as a silver 2009 Honda Civic, bearing Ohio license plate GVR3937.

50. A review of Ohio Bureau of Motor Vehicle records revealed the 2009 Honda Civic (the **SUBJECT VEHICLE**) is registered to Ryan C. DRISCOLL (the **SUBJECT PERSON**) at 2979 Grasmere Ave, Columbus, OH 43224 (the **SUBJECT PREMISES**). A search of public records databases that provide names, dates of birth, addresses, associates, telephone numbers, and other information was conducted for Ryan DRISCOLL. The public records indicated that DRISCOLL's current address is listed as 2979 Grasmere Ave, Columbus, OH 43224 and his date of birth is August 19, 1983. Records also indicated that DRISCOLL is a registered sex offender under federal supervision within the Southern District of Ohio.

51. An online search of the federal sexual offender registry revealed Ryan C. DRISCOLL is a Tier II sexual offender, having been convicted in 2011 in the Southern District of Ohio for Possession of Child Pornography under case number 2:11-CR-181. His case was assigned to Judge Marbley and he was sentenced to five years imprisonment and 10 years of supervised release on August 8, 2012. DRISCOLL's address is listed as 2979 Grasmere Ave, Columbus, OH 43224 (the **SUBJECT PREMISES**) and he is employed by RD Cook Custom Cabinets located at 883 E. Hudson St, Columbus, OH 43211.

52. Furthermore, your affiant learned that in 2023, HSI Columbus investigated DRISCOLL for communicating with an undercover HSI agent on Telegram about the sexual abuse of

children while he was on federal supervised release. DRISCOLL admitted to purchasing an Android smartphone with cash at a nearby Dollar store and throwing away the receipt and packaging. During the search, law enforcement observed a wooden chest with various baby items including infant size diapers, swim diapers, infant onesies, pacifiers, baby bottles, children's underwear, a backpack diaperbag and toys. There were children's underwear, diapers, and Paw Patrol bed sheets located in various other places throughout the house including under DRISCOLL's mattress in his bedroom.  In October 2023, DRISCOLL was convicted of violating the terms and conditions of his probation and sentenced to an additional nine months of incarceration and 10 years of supervision by Judge Marbley. DRISCOLL was released from custody in June 2024 and is currently under federal supervision at this time.

53. Investigators compared the Walmart surveillance footage of the adult male purchasing the TracFone on June 21, 2025 to DRISCOLL's BMV photograph and concluded the adult male appears to be DRISCOLL (the **SUBJECT PERSON**) in the surveillance footage.

54. Based on the analysis of the historical cell tower data provided by Verizon Wireless for phone number (380) 239-0663, DRISCOLL's residence located at 2979 Grasmere Ave, Columbus, OH and his place of employment, located at 883 E. Hudson St, Columbus, OH are both located within the several block radius previously identified for the user of the cellular device which was utilized to access child sexual abuse material.

55. Lastly, HSI conducted surveillance at 2979 Grasmere Ave, Columbus, OH (the **SUBJECT PREMISES**) several times in July of 2025 and observed a silver Honda Civic (the **SUBJECT VEHICLE**) in the driveway.  Furthermore, DRISCOLL, the **SUBJECT PERSON**, was observed driving the **SUBJECT VEHICLE** from his residence to his place of employment, RD Cook Custom Cabinets located at 883 E. Hudson St., Columbus, OH.

56. Based on the foregoing, there is probable cause to believe that the federal criminal statutes cited herein have been violated, and that the contraband, property, evidence, fruits and instrumentalities of these offenses, are located on/in the **SUBJECT PREMISES,** the **SUBJECT PERSON,** or the **SUBJECT VEHICLE**.  Therefore, I respectfully request that this Court issue search warrants for the locations described in **Attachment A, B,** and **C**, authorizing the seizure and search of the items identified as being attributed to Ryan DRISCOLL described in **Attachment D.**

17

## COMMON CHARACTERISTICS OF INDIVIDUALS WITH A SEXUAL INTEREST IN CHILDREN

57. Based on my own knowledge, experience, and training in online child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals who have a sexual interest in minors and/or seek to sexually exploit minors via online communications:

    A. Those who have a sexual interest in minors, may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from discussions of or literature describing such activity.

    B. Those who have a sexual interest in children and/or seek to sexually exploit minors via online communications may collect sexually explicit or suggestive materials in a variety of media. These materials are frequently used for the sexual arousal and gratification of the individual. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

    C. Individuals who have a sexual interest in children have been found to: download, view, then delete child pornography on a cyclical and repetitive basis; view child pornography without downloading or saving it; or save child pornography materials to cloud storage.

    D. Those who have a sexual interest in minors may correspond online with and/or meet others to share information about how to find child victims, exchange stories about their sexual exploits with children, and/or exchange child pornography materials; and tend to conceal and maintain in a safe, secure and private environment such correspondence as they do any sexually explicit material related to their illicit sexual interest.

    E. When communications relating to a sexual interest in children, and/or child pornography files are stored on or accessed by computers and related digital media, forensic evidence of the accessing, downloading, saving, and storage of

18

such evidence may remain on the computers or digital media for months or even years even after such files have been deleted from the computers or digital media.

58. Based on the information that has been gathered to date by your affiant, including law enforcement reports, subpoena requests and returns, and social media exchanges including, but not limited to, those taking place on "Application A", your affiant has reason to believe that the individual utilizing the "diaperundiesdude" account on "Application A", most likely Ryan DRISCOLL, the **SUBJECT PERSON**, was receiving and requesting child sexual abuse images and videos using a digital media device that he can carry or keep both in his residence or in his vehicle. Therefore, it is likely that digital media devices attributed to **SUBEJCT PERSON**, residing at the **SUBJECT PREMISES** and driving the **SUBJECT VEHICLE** contains items which constitute instrumentalities, fruits, and evidence of violations of 18 U.S.C. §§ 2252 and 2252A – the distribution, receipt, and/or possession of child pornography.

## CONCLUSION

59. Based on the aforementioned factual information, your affiant submits there is probable cause to believe that violations of 18 U.S.C. §§ 2252 and 2252A – the distribution, receipt, and/or possession of child pornography, have been committed, and evidence of those violations is located in the **SUBJECT PREMISES** described in **Attachment A**, or **SUBJECT VEHICLE** described in **Attachment B** or on the **SUBJECT PERSON** described in **Attachment C**. Your affiant respectfully requests that the Court issue a search warrant authorizing the search and seizure of the items described in **Attachment D**.

ANNA S EDGAR
Digitally signed by ANNA S EDGAR
Date: 2025.07.29 07:59:20 -04'00'

Anna S. Edgar
Special Agent
Homeland Security Investigations

Sworn to and subscribed before me this 29th day of July, 2025.



Elizabeth A. Preston Deavers
United States Magistrate Judge